Michael McClelland, Esq. (State Bar No. 204233)
McClelland Advocacy
Address for Service of Process:
6520 Lonetree Blvd., Suite 134
Rocklin, CA 95765
(916) 847-6891 – Tel
(916) 588-1586 – Fax
mdm@mcclellandadvocacy.com

Los Angeles Office:
515 S. Flower St.
18th Floor
Los Ageles, CA  90071

Curtis C. Jung, Esq. (State Bar No. 130657)
JUNG & YUEN, LLP
888 South Figueroa Street, Suite 720
Los Angeles, California 90017
(213) 689-8880 - Tel
(213) 689-8887 – Fax
Curtis@jyllp.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| EMPLOYEE HEALTH SYSTEMS MEDICAL GROUP, Inc., a California Corporation<br><br>Plaintiff,<br><br>Vs.<br><br>DEPARTMENT OF MANAGED HEALTH CARE, a California Regulatory Agency; SHELLEY ROUILLARD, an individual; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No:<br><br>COMPLAINT FOR:<br>**(1) INJUNCTIVE RELIEF OF ULTRA VIRES ORDER;**<br>**(2) VIOLATION OF DUE PROCESS CLAUSES (5TH AND 14TH AMENDMENTS);**<br>**(3) VIOLATION OF EXCESSIVE FINES CLAUSE (8TH AMENDMENT)**<br>**(4) DECLARATORY RELIEF;**<br>**(5) DISCRIMINATION IN VIOLATION OF CAL GOV. CODE § 11135 *et seq.*;**<br>**(6)  DISCRIMINATION IN VIOLATION OF THE FEDERAL CIVIL RIGHTS ACT (42 U.S.C. § 1983).** |

Plaintiff Employee Health Systems Medical Group, Inc., by and through its undersigned attorneys, hereby seeks injunctive, declaratory, and other related relief based

**COMPLAINT FOR INJUNCTIVE RELIEF AND OTHER RELATED CLAIMS**

upon the following:

## I.    **JURISDICTION AND VENUE**

44. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331(a), 1343 and 1367 (ancillary jurisdiction for state claim).  Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 (2010) and 2202.

45. This Court has federal question jurisdiction under the Excessive Fines Clause (8th Amendment), the Due Process Clauses (5th and 14th Amendments),  and the Federal Civil Rights Act (42 U.S.C. § 1983).

46. Venue is proper in this Court pursuant to 28 U.S.C. §§1391 (c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## II.    **PARTIES**

47. Plaintiff EMPLOYEE HEALTH SYSTEMS MEDICAL GROUP, INC. ("Plaintiff" or "EHS") is a professional medical corporation with its principal place of business in Los Angeles County, California.  EHS is doing business by offering services in managed health care as an Independent Physician Association, ("IPA") throughout the State of California, including Los Angeles County and within this judicial district.

48. Defendant DEPARTMENT OF MANAGED HEALTH CARE ("Defendant" or "DMHC") is a California regulatory agency charged with licensing and regulating health care service plans, sometimes referred to as HMOs in the state of California.

49. Defendant Shelley Rouillard ("Rouillard") is an individual and a Director of DMHC and is sued herein as an individual acting under the color of authority granted to her under the Knox-Keene Health Care Service Plan Act of 1975, Cal. Health & Saf. Code §1341 et seq.  Defendant Rouillard has held and maintained the position of Director for at least several years and served as DMHC's Chief Deputy Director before becoming Director.  As the Director, Defendant Rouillard has capacity to oversee the Orders issued

17

by the DMHC.  Defendants DMHC and Rouillard are collectively referred to as "Defendants".

50. Plaintiff is ignorant of the true names and capacities of the defendants sued in this Complaint as Does 1 to 50, inclusive, and therefore sue these defendants by these fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained.  Plaintiff believes that each of the fictitiously named defendants is indebted to the Plaintiff as alleged in this Complaint, and that the Plaintiff's rights against the fictitiously named defendants arise from.

## III.    STATEMENT OF FACTS

### A.  Plaintiff EHS

51.  Plaintiff EHS is a California professional medical corporation, duly licensed and in good standing with the Secretary of State and California Medical Board.  All of the individual owners of EHS are minority class members of Chinese descent.  EHS is an IPA, a medical group which provides care through its network of contracted independent physicians to patients in the managed care/HMO system.  Until the events alleged herein EHS managed the care and treatment of more than 600,000 members throughout California including within this judicial district.  EHS predominantly cared for patients who received their care through California's Medicaid program, known as Medi-Cal.  In this program known as "Medi-Cal managed care," the State contracts with health plans such as Health Net, Molina, LA Care, and Anthem Blue Cross of California to provide care to the Medi-Cal members assigned to these plans.  These plans in turn contract with IPAs such as EHS to provide the actual care to members.  Because of its Medi-Cal concentration, EHS primarily served low-income and minority communities whose populations are dependent upon Medi-Cal.   EHS is an IPA that predominately serves minority communities (i.e. Asian Americans, Latin Hispanics, and African Americans).

52. Plaintiff EHS was established on or about 1990 and provides health care coverage through the Medi-Cal, Medicare, and other related plans to its members by contracting

18

with various health plans, including Adventist Health Plan, Inc., Aetna Health of California, Inc., Blue Cross of California, Inc., Care 1st Health Plan, Cigna Healthcare of California, Inc., Fresno-Kings-Madera Regional Authority, Health Net of California, Inc., Local Initiative Health Authority for L.A. County, and Molina Healthcare of California (collectively referred to as the "Health Plans" ).

**B. PLAINTIFF ENTERS INTO A SERVICE AGREEMENT WITH SYNERMED, A SEPARATE COMPANY**

53. On or about October 2006, Plaintiff EHS entered into a Management Service Agreement ("Service Agreement") with a third party vendor, SynerMed ("SynerMed") to serve as the Management Service Organization ("MSO") in providing administrative services necessary for EHS to serve its members. Pursuant to the terms of the Agreement, SynerMed agreed to provide administrative functions, including utilization review, quality assurance, provider claim administration, capitation management, medical economics/data analysis, financial management and accounting, and general contracts administration as the MSO. EHS paid a fee to SynerMed for its services rendered.

54. Plaintiff is informed and believes, and on that basis alleges, that SynerMed was an experienced MSO and provided similar services to other similar IPAs. The list of SynerMed's customers include Alpha Care Medical Group ("Alpha"), Angeles IPA ("Angeles"), Alvarado Medical Center, Crown City Medical Group ("CCMG"), MultiCultural Primary Care Medical Group ("Multi") and EHS (hereinafter collectively referred to as "SynerMed's Clients"). At all times, SynerMed is and was a separate and independent corporation with its own employees and management and was neither a parent nor subsidiary of Plaintiff EHS.

**C. EHS BECOMES AWARE OF SYNERMED'S SEPARATE ALLEGED MISCONDUCT AND TERMINATES SYNERMED AS ITS MSO**

55. In November 2017, Plaintiff became aware that SynerMed was reported to be

19

"significantly out of compliance" with various requirements relating to SynerMed's Clients' Members. SynerMed's Utilization Management Department had allegedly denied requests for healthcare services without basis. SynerMed failed to advise EHS of the specific alleged misconduct at any time (hereinafter collectively referred to as "Misconduct"). As a result of such Misconduct, EHS terminated its contract with SynerMed.

56. Further, as a result of the alleged violations against SynerMed and its officers, on or about December 22, 2017, Plaintiff filed a separate lawsuit identified as *EHS v. SynerMed, etc.*, Case No. EC067812 ("SynerMed Lawsuit") alleging breach of fiduciary duties and other related claims against SynerMed.

### D. **DEFENDANT DMHC ARBITRARILY AND CAPRICIOUSLY ISSUED AN ULTRA VIRES CEASE AND DESIST ORDER BASED UPON NO FINDINGS OF FACT AND INSUFFICIENT ALLEGATIONS**

57. After Plaintiff filed its lawsuit against SynerMed for its alleged Misconduct, on or about December 26, 2017(day after Christmas), Defendant DMHC, without any warning or notice, surprisingly and unjustifiably issued an Order to Cease and Desist ("Order") in a case identified as *In the Matter of: EMPLOYEE HEALTH SYSTEMS MEDICAL GROUP, INC.*, Enforcement Matter No. 17-1703 ("EHS Enforcement Matter"). In the Order, DMHC alleges that SynerMed, not EHS, engaged in a practice known as "economic profiling," in violation of California Health and Safety Code Section 1367.02. Attached as Exhibit "A" and incorporated by this reference is a true and correct copy of the Order.

58. Specifically, DMHC alleges that SynerMed engaged in "economic profiling practices," and falsely concluded that violations of third party SynerMed were also attributable to EHS without alleging any facts as to EHS' knowledge or participation in any such "ecomomic profiling.". EHS had no knowledge and no involvement as to SynerMed's alleged economic profiling. SynerMed is an entirely separate, independent and distinct corporation. It is not EHS. EHS, along with other IPAs, had only retained SynerMed as its MSO to perform various medical and administrative functions to

20

improve the operations of EHS. The Order does not allege EHS knew of SynerMed's conduct, nor directed it or aided the same.

59. Prior to its Order, DMHC had never enforced Health and Safety Code Section 1367.02 against any of its licensee-health plans, nor against any IPA.

60. Critically, the Order alleges that each of the respondent health plans named in the Order violated California law by failing to notify the DMHC Director of economic profiling by SynerMed. Yet the Order's sole remedy is to order each respondent-health plan to terminate their contracts with EHS alone. EHS was not made a respondent to the Order. Accordingly, EHS had no opportunity under the California Administrative Procedures Act to request a hearing to challenge the authority and findings of the Order.

61. EHS' cumulative contracts with each of the respondent-health plans constitute cognizable property interests worth in excess of $200,000,000.

62. The Order is facially and as applied in violation of the Knox-Keene Act, and exceeds DMHC's authority. Despite EHS's actions taken against SynerMed, DMHC still ordered the Health Plans to terminate their respective relationships with Plaintiff.

63. Furthermore, DMHC issued an Order which is in direct violation of the mandatory requirement for Health Plans relating to the "block transfer filing." California mandates that no Health Plans may transfer or redirect more than 2,000 members at a time, unless the Health Plans first submit a "block transfer filing" to the DMHC. In fact, Health Plans must submit the block transfer filing to the DMHC at least seventy-five (75) days prior to the contract termination date. See, Cal. Code Reg., Title 28, Section 1300.67.1.3. The Regulation for "block transfer filing" also requires that the proposed transfer or redirection be posted on the DMHC's public website and, that the members receive notice of their rights to continuing care from the terminated physician. Despite these legal requirements, the Order directs each of the health plans doing business with EHS to summarily terminate their contracts with EHS without complying with the block transfer requirements, particularly ignoring the seventy-five (75) days "block transfer filing, public posting/notice, and continuity of care rights requirements. See, Cal. Code Reg.,

tit. 28, §1300.67.1.3.   As a result of the Order, EHS suffered a loss of contracts with the health plans and loss of their assigned members.

64. As a result of the Order, many of EHS' contracted health plans including, but not limited to, Health Net of California, Inc., began to immediately, after December 26, 2017, initiate the transfer or redirection of their members assigned to EHS to other IPAs without complying with the block transfer filing requirements.  EHS is informed and believes and thereupon alleges that the failure to comply with the block transfer requirements resulted in EHS members encountering delay and difficulty in accessing care to which they were entitled under California law.

65. The Order caused EHS significant economic harm and loss of its property, most specifically the termination of its health plan contracts.

66. Plaintiff is informed and believes and thereupon alleges that as of the date of the filing of this Complaint, DMHC and Rouillard are aware of the facts as alleged herein, but have and continue to refuse to amend or withdraw the Order, despite Plaintiff's express requests.

67. EHS is owned by Several physicians, all of whom are of Chinese descent.  At the timethe Order was issued, Defendants were aware of these facts.  As alleged herein, SynerMed managed a number of IPAs, including IPAs whose ownership was not of Chinese descent.  The Order did not require the termination of any other SynerMed-managed IPA other than Plaintiff.

68. At the time the Order was issued Defendants were amd had been aware of conduct by other IPAs alleged to be unlawful under, inter alia, the Knox-Keene Act.  At least one such IPA made campaign donations to the Administration of Governor Edmund Brown at the same time and the Defendants took no actions against this IPA.  EHS and its shareholders, however, at the time of the Defendants' acts as alleged herein, were not donors to the campaign of Goveror Brown.  Plaintiff is informed and believes andthereupon alleges that the actions Defendants took, as alleged herein, were in part motivated by a desire to discriminate or retaliate against Plaintiff for exercising its First

Amendment right to refrain from political speech or donations to the campaign of Governor Brown. Plaintiff is informed and believes and thereupon alleges that either Defendant Rouillard or Governor Brown personally benefited from the actions alleged herein.

### E. EHS' GOOD FAITH EFFORTS TO MEET AND CONFER WITH DMHC

69. After DMHC issued the Order, on January 4, 2018, Plaintiff had a meeting with the DMHC to formally request that the Order be rescinded and withdrawn since there was no basis for its Order and also violated several of Plaintiff's constitutional and statutory rights as alleged in this Complaint. Plaintiff informed Defendant DMHC that Plaintiff was not related to SynerMed and that Plaintiff and SynerMed were separate and independent companies. Plaintiff also advised DMHC that Plaintiff had filed a lawsuit against SynerMed. Other than this meeting, DMHC never offered, formally or informally, Plaintiff an opportunity to address or meaningfully dispute any of the allegations, findings and conclusions made in the Order.

**FIRST CLAIM FOR RELIEF**
**FOR INJUNCTIVE RELIEF ENJOINING THE ORDER**
**(AGAINST DEFENDANTS DMHC, ROUILLARD**
**AND DOES 1 THROUGH 50, INCLUSIVE)**

70. Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 26.

71. As alleged herein, the Order directs each respondent health plan to terminate their contracts with EHS and to transfer more than 600,000 members to other IPAs or physician groups without the requirement of filing a block transfer filing and, accordingly, without any of the legal protections which inure to the block transfer filing process.

72. The Order lacks any factual or legal basis permitting the DMHC Director to exceed her jurisdiction and powers in ignoring the requirements of the block transfer filing regulation.

73. The Order lacks any factual or legal basis permitting the DMHC Director to exceed her jurisdiction and powers by terminating EHS' contracts based on the alleged technical violations [in not filing an economic profiling notice] of the respondent-health plans.  Defendants' action, thus, were without any rational or reasonable connection to the purported/alleged facts, and were arbitrary and capricious.

74.  In the Order, DMHC attributes SynerMed's alleged "economic profiling practices" to EHS despite the fact that EHS is a separate and independent corporation and EHS had no knowledge of SynerMed's alleged misconduct.  Moreover, SynerMed served as MSO for numerous other companies other than EHS, but DMHC issued its Order attacking EHS only.  Defendants' action, thus, were without any rational or reasonable connection to the purported/alleged facts, and were arbitrary and capricious.

75. The Order's sole statutory basis is an alleged violation of Health and Safety Code Section 2367.02, the alleged "economic profiling" practices of SynerMed.  DMHC has not promulgated a regulation pursuant to the California Administrative Procedures Act, defining what conduct constitutes economic profiling, particularly as unlawful conduct distinct from the ordinary business of managing care in the managed care industry.  In issuing its Order, DMHC has applied and enforced a rule of general application without complying with the requirements of the California Administrative Procedures Act.

76. As alleged herein, DMHC never promulgated a regulation defining economic profiling pursuant to California law, despite the legal authority to do so.  Health and Safety Code Section 1367.02 states:

"(a)  On or before July 1, 1999, for purposes of public disclosure, every health care service plan shall file with the department a description of any policies and procedures related to economic profiling utilized by the plan and its medical groups and individual practice associations.   The filing shall describe how these policies and procedures are used in utilization review, peer review, incentive and penalty programs, and in provider retention and termination decisions.  The filing shall also indicate in what manner, if any, the economic profiling system being used takes into consideration risk adjustments that reflect case mix, type and severity of patient illness, age of patients, and other enrollee characteristics that may account for higher or lower than expected costs or utilization of services.   The filing shall also indicate how the economic profiling activities avoid being in conflict with subdivision (g) of Section 1367 , which requires each plan to demonstrate that medical decisions are rendered by qualified medical providers, unhindered by fiscal and administrative management.   Any changes to the policies and procedures shall be filed with the director pursuant to Section 1352 .   Nothing in this section shall be construed to restrict or impair the department, in its discretion, from utilizing the information filed pursuant to this section for purposes of ensuring compliance with this chapter.

(b)  The director shall make each plan's filing available to the public upon request. The director shall not publicly disclose any information submitted pursuant to this section that is determined by the director to be confidential pursuant to state law.

(c)  Each plan that uses economic profiling shall, upon request, provide a copy of economic profiling information related to an individual provider, contracting medical group, or individual practice association to the profiled individual, group, or association.   In addition, each plan shall require as a condition of contract that its medical groups and individual practice associations that maintain economic profiles of individual providers shall, upon request, provide a copy of individual economic profiling information to the individual providers who are profiled.   The economic profiling information provided pursuant to this section shall be provided upon request until 60 days after the date upon which the contract between the plan and the individual provider, medical group, or individual practice association terminates, or until 60 days after the date the contract between the medical group or individual practice association and the individual provider terminates, whichever is applicable.

(d)  For the purposes of this article, "economic profiling" shall mean any evaluation of a particular physician, provider, medical group, or individual practice association based in whole or in part on the economic costs or utilization of services associated with medical care provided or authorized by the physician, provider, medical group, or individual practice association.

40. Plaintiff alleges that Section 1367.02 on its face and as applied by Defendants, is constitutionally so vague and ambiguous that no reasonable IPA, health plan, or any other person involved in the managed care industry could have notice of what conduct constitutes "economic profiling," an "economic profile," or "…evaluation of a particular physician, provider, medical group, or individual practice association based in whole or in part on the economic costs or utilization of services associated with medical care provided or authorized by the physician, provider, medical group, or individual practice association," as distinct from the normal management of care which is the foundation of all managed care.

41. Further, Section 1367.02 places no mandate on any person other than the licensed health plan such that no reasonable IPA or person would know that it had any obligations under the statute, or that it could be punished under the statute.

42. Furthermore, Section 1367.02 does not actually prohibit economic profiling, but rather simply requires the DMHC-licensed plan to disclose its economic profiling to the Director.  Consequently, no reasonable PA or person would foresse that engaging in ecooic profiling, whatever that ambiguous and vague term might be held to mean, would result in a person's deprivation of all of its property interests at the Defendants' arbitrary fiat.

25

43. Plaintiff respectfully requests that the Court issue temporary, preliminary and permanent injunctive relief against the imposition of the Defendant's Order, and declare and enjoin the further enforcement of California Health and Safety Code Section 1367.02 as an unconstitutionally vague statute.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF DUE PROCESS CLAUSES – FIFTH
## AND FOURTEENTH AMENDMENTS
## (AGAINST DEFENDANTS DMHC
## AND DOES 1 THROUGH 50, INCLUSIVE)

44. Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 43.

45. The Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution prohibit any state from "depriv[ing] any person of life, liberty, or property, without due process of law."

46. As a State department, DMHC, its employees, representatives and agents, owed Plaintiff a duty under the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution regarding Plaintiff's right to have an opportunity to defend and respond to any claims levied against Plaintiff. This duty is to provide and protect Plaintiff's property rights from unfair and baseless claims and actions by Defendant DMHC, namely notice of the deprivation of Plaintiff's property rights and a meaningful opportunity to be heard.

47. DMHC's Order is depriving and denying Plaintiff of its property rights, namely health plan contracts worth in excess of $200MM annually. Along with the Health Plans, such property rights include but are not limited to its existing business contract, income, revenue, business relations and contracts with its members, customers and investors, prospective business contracts and prospective economic advantages.

48. DMHC purposefully did not make EHS a respondent to the Order. Hence, under California's Administrative Practices Act and the terms of the Order itself, EHS had no opportunity to file an appeal of the Order or request for an administrative hearing. *See*

26

Cal. Govt. Code § §11500-11529.

49. Thus, the Administrative Procedures Act as applied to EHS and this Order, violates Plaintiff's 5th and 14th Amendment due process rights to notice and a meaningful opportunity to be heard before the termination and deprivation of Plaintiff's property rights.

50. Despite this well-established duty owed to Plaintiff, Defendant DMHC issued its Order depriving Plaintiff of its property interests, on December 26, 2017 (the day after Christmas), without any notice or fair and equal opportunity to be heard.

51. Further, as alleged herein, Health and Safety Code Section 1367.02 is unconstitutionally vague.  Accordingly, the Order deprived EHS of its property interest (its health plan contracts) without notice that it's alleged conduct violated the law.

52.  As a direct and proximate cause of Defendant's acts, EHS was deprived of its health plan contracts and corresponding revenue, in an amount to be determined at trial, but which exceed $200MM per annum.  Plaintiff seeks to recover any and all damages against Defendant DMHC resulting for its violations under the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.

53. Plaintiff requests this Court temporarily and permanently enjoin DMHC from enforcement of the Order; from enforcing Health and Safety Code Section 1367.02 against any person; and for an order declaring the DMHC's Order void.

### THIRD CLAIM FOR RELIEF
### FOR VIOLATION OF EXCESSIVE FINES CLAUSE – EIGHTH AMENDMENT
### (AGAINST DEFENDANTS DMHC
### AND DOES 1 THROUGH 50, INCLUSIVE)

54.  Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 53.

55.  Defendant is precluded from issuing monetarily punishing any person under the Excessive Fines and Penalties Clause of under the Eighth Amendment to the U.S. Constitution.

56. As alleged herein, the Order alleges facts that *SynerMed* engaged in economic

profiling without the appropriate notice having been filed by the *health plans*. [emphasis added].  Notably, the sole statutory violation alleged in the Order is the alleged violation of California Health & Safety Code Section 1367.02(a).  Order ¶16.  That Section however, provides in pertinent part:

"*every health care service plan shall file* with the department a description of any policies and procedures related to economic profiling utilized by the plan and its medical groups and individual practice associations.  The filing shall describe how these policies and procedures are used in utilization review, peer review, incentive and penalty programs, and in provider retention and termination decisions.  The filing shall also indicate in what manner, if any, the economic profiling system being used takes into consideration risk adjustments that reflect case mix, type and severity of patient illness, age of patients, and other enrollee characteristics that may account for higher or lower than expected costs or utilization of services.  The filing shall also indicate how the economic profiling activities avoid being in conflict with subdivision (g) of Section 1367, which requires each plan to demonstrate that medical decisions are rendered by qualified medical providers, unhindered by fiscal and administrative management.  Any changes to the policies and procedures shall be filed with the director pursuant to Section 1352.  Nothing in this section shall be construed to restrict or impair the department, in its discretion, from utilizing the information filed pursuant to this section for purposes of ensuring compliance with this chapter.  Health & Saf. Code §1367.02 [emphasis supplied].

57. The Order, therefore, alleges at most that the respondent health plans failed to file a description of any policies and procedures related to economic profiling utilized by the plan and its medical groups and individual practice associations.  The legal duty alleged to be violated, is the duty of a health plan, not the duty of EHS.  Yet the remedy ordered by the Director terminates EHS' contracts alone.  The remedy is unconstitutionally excessive because it punishes EHS for a health plan's purported failure to comply with a "description" notice filing requirement.  Accordingly, the Order's directive that EHS' contracts be terminated is wholly arbitrary, capricious, and excessive in relation to the

purported violation of a third party.

58. Furthermore, as a result of the false findings of facts and conclusion set forth in the Order, Defendant DMHC has ordered that the Health Plans terminate their relationships with Plaintiff. Without any basis and due process, Defendant DMHC has issued an Order which will effectively destroy and irreparably harm EHS.

59. Plaintiff is informed and believes and based thereon alleges that as a result of the Defendant DMHC's action, the Fines and Penalties against EHS are clearly excessive and improper and has violated Plaintiff's Constitutional rights.

60. Wherefore Plaintiff seeks all available equitable and legal remedies against DMHC including but not limited to temporary, preliminary and permanent injunctions enjoining enforcement of the Order.

**FOURTH CLAIM FOR RELIEF**

**FOR DECLARATORY RELIEF**

**(Against DEFENDANTS DMHC, ROUILLARD**

**and Does 1 through 50, Inclusive)**

61. Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 60.

62. This is a claim pursuant to Cal. Code Civil Procedure Section 1060 et seq.

63. An actual controversy exists concerning the Order's lawfulness and its application to Plaintiff. In particular, as alleged herein, the Order and its application to EHS violated Plaintiff's statutory and constitutional rights.

64. Wherefore, Plaintiff seeks a declaration of the parties' respective rights.

65. A declaration of the respective rights and interests of the parties is necessary and appropriate. At this time, there is no adequate remedy at law other than as prayed for by which the rights of the parties may be determined.

**FIFTH CLAIM FOR RELIEF**

**FOR DISCRIMINATION IN VIOLATION OF**

**CAL. GOV. CODE § 11135 *et seq.***

**(Against DEFENDANTS DMHC, ROUILLARD**

**and Does 1 through 50, Inclusive)**

66. Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 65.

67. California Government Code § 11135 and its implementing regulations prohibit discrimination in programs or activities funded by the State.  Section 11135(a) provides, in pertinent part, that "[n]o person in the State of California shall, on the basis of . . . race, national origin, ethnic group identification . . . [or] color . . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

68. Regulations implementing Government Code § 11135 provide that it is unlawful, discriminatory practice "to utilize criteria or methods of administration that . . . have the purpose or effect of [1] subjecting a person to discrimination on the basis of ethnic group identification . . . [or] [2] defeating or substantially impairing the accomplishment of the objectives of the recipient's program with respect to a person of a particular ethnic group identification . . . ." 2 Cal. Code Regs. § 11154(i).

69. As a state-funded department and employee respectively, Defendants are subject to California Government Code § 11135.  Therefore, Defendants were prohibited from unlawfully subjecting Plaintiff to discrimination on the basis of race, national origin, ethnic group identification, or color.

70. As previously alleged herein, Defendants arbitrarily issued its unprecedented Order attacking Plaintiff only, and no other SynerMed customers.  All of the individual owners of EHS are protected minority class members and of Chinese descent.

71. Although SynerMed provided similar services to other independent managed care IPAs, Defendants did not issue any cease and desist orders against SynerMed's other customers; Defendants issued the Order depriving property interests of Plaintiff only.

72. Therefore, Plaintiff is informed and believes, and upon such information and belief alleges that Defendants each discriminated against Plaintiff on the basis of race, national origin, ethnic group identification, and/or color.

30

73. Further, DMHC had never enforced Section 1367.02 prior to the Order.

74. By issuing the unprecedented and improper Order depriving on Plaintiff of its property interests, Defendants failed to uniformly enforce the Knox-Keene Health Care Service Plan Act of 1975.

75.   Plaintiff is informed and believes, and upon such information and belief alleges that Defendants each acted in a wrongful manner in violation of California Government Code § 11135 as set forth in Plaintiff's Complaint, and that the damages alleged in Plaintiff's Complaint were a proximate result of the wrongful conduct of said Defendants and Does 1 to 20.

76. The effect of Defendants' discriminatory Order will continue unabated unless enjoined.

<u>SIXTH CLAIM FOR RELIEF</u>

**FOR DISCRIMINATION IN VIOLATION OF**

**THE FEDERAL CIVIL RIGHTS ACT**

**42 U.S.C. § 1983**

**(Against DEFENDANT ROUILLARD in her individual capacity acting under color of authority, and Does 1 through 50, Inclusive)**

77.   Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 76.

78.   42 U.S.C. § 1983 prohibits "a person, acting under color of state law [from] [depriving] another of rights guaranteed under the Constitution." <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  There is no immunity available to state officials when their conducts "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

79.    As a Director of DMHC, a California State Department, Defendant Rouillard at all times herein was acting pursuant to the authority granted her under the Knox-Keene Act.  See, Order ¶¶11-12, 33. Rouillard also undertook further acts under color of her authority including but not limited to the issuance of administrative subpoenas without

31

probable cause and motivated solely by Rouillard's intent to discriminate against Plaintiff, as alleged herein.

80.    Pursuant to 42 U.S.C. § 1983, Defendant Rouillard, in her individual capacity, under the color of authority was prohibited from depriving Plaintiff of its Constitutional and statutory rights while purporting to administer and enforce the Knox-Keene Act.

81.    As previously alleged in this Complaint, Defendant Rouillard intentionally and wrongfully violated Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights by capriciously issuing the ultra vires Order wrongfully taking property interests of Plaintiff without notice and a meaningful opportunity to be heard and respond to any claims levied against Plaintiff.

82.    In issuing the Order and taking other acts as alleged herein, Defendant Rouillard was purporting to act under color of the authority granted to her under the Knox-Keene Act.

83.    The Order also violates Plaintiff's Eight Amendment right to be free from Excessive Fines, as alleged herein.

84.    Defendant Rouillard has been the Chief Deputy Director or Director of DMHC since at least 2012.  DMHC licenses and regulates health plans, not IPAs such as Plaintiff, pursuant to the Knox-Keene Act, California Health and Safety Code Section 1341 et seq..  Notwithstanding this jurisdictional limitation, DMHC has, under Defendant Rouillard's direction as either Chief Deputy Director or Director, has commenced at least two actions, under the color of her authority, against IPAs, both of which were owned and/or operated by physicians of Asian or South Asian descent.  During the same period of time, DMHC has initiated no actions against IPAs owned or operated by non-Asian physicians.

85.    Rouillard's actions as alleged herein were intended, or have had the effect, of depriving Plaintiff and its shareholders of Asian descent, of their right to be free from racial discrimination pursuant to Title 42 United States Code Section 1983 et seq.

86.    As alleged herein, Rouillard has a history of commencing more than one action against IPAs the DMHC does not regulate, which are owned or operated by persons of Asian or South Asian descent.  Any reasonable person acting as Director of DMHC would

have been aware of the facts as alleged herein. Any reasonable person acting as the executive of a state agency would be aware that federal and state laws, including the California and United States Constitutions forbid discrimination based on race and/or ancestry.

87. In taking these acts, as alleged, Rouilliard acted with the intent to deprive Plaintiff of its Constitutional rights and/or was deliberately indifferent to the actions taken at her direction or on her behalf.

88. As a direct and proximate result of Defendant Rouillard's unconscionable violations of Plaintiff's Constitutional and statutory rights, Plaintiff has suffered substantial damages and irreparable harm, including, but not limited to the loss of its contracts, disparagement of its name and reputation, and attorney's fees.

## SEVENTH CLAIM FOR relief: Writ of Mandate (Cal. Code Civ. Procedure §§1085, 1086, 1094.5)

89. Plaintiff refers to and incorporates herein the allegations contained in Paragraphs 1 through 88.

90. At all times DMHC was under a present, ministerial duty to enforce the Knox-Keene Act and its implementing Regulations, including specifically, the Block Transfer Regulation. See, Cal. Code Regs., Title 28, §1300.67.1.3. Moreover, Defendant's authority and jurisdiction is limited to those powers and jurisdiction granted to Defendants pursuant to the Knox-Keene Act, California Health and Safety Code Section 1340 et seq. Acts in excess of Defendants' jurisdiction and powers are utra vires and unenforceable and therefore do not lie with Defendants' discretion.

91. Defendants have no authority to regulate IPAs such as Plaintiff. DMHC does not license IPAs, nor does it regulate them. In taking the actions alleged herein, Defendants acted arbitrarily and capriciously, and in excess of their jurisdiction.

92. As alleged herein, DMHC ignored and failed to enforce the Block Transfer Filing regulation despite a present, ministerial obligation to do so.

93. In taking the actions alleged herein, Defendant DMHC acted capriciously and

33

arbitrarily, out of corrupt and discriminatory motives, refused to enforce the Act and its own Regulations, and enforced the Act, specifically Health and Safety Code S1367.02, contrary to its express terms as alleged herein.

94.    Defendants' lack discretion to issue Orders which are in excess of their statutory authority, are unconstitutional, or are arbitrary and capricious.

95.    In taking each of the actions alleged herein, Defendants' actions lacked any rational connection between the facts alleged and the conclusions made.  See, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971);  Further, in taking the actions alleged herein, Defendants did not exercise any discretion granted to Defendants under law or statute, and in fact acted in excess of their authority.  Defendants' actions, in contrast, were ultra vires and without any statutory authority.  Defendants exercised no discretion because as a matter of law, no agency has discretion to exceed its authority or to act arbitrarily.  *Morris v. Williams* (1967) 67 Cal. 2d 733  Furthermore,  Defendants' actions were arbitrary, capricious and procedurally unfair capricious and thus are reviewable by this court.  See, *Baldwin v. City of Los Angeles* (1999) 70 Cal.App.4th 819, 836; *Fullerton Joint Union High School Dist. v. State Bd. of Education* (1982) 32 Cal.3d 779, 786.

96.    Plaintiff has a beneficial interest in the DMHC's non-arbitrary performance of its ministerial duties in that Plaintiff's contracts were terminated, *and* its members transferred as a direct and proximate result of DMHC's arbitrary and capricious failure to perform ministerial duties and erroneous enforcement of the Act.

97.    Plaintiff lacks a plain, speedy, adequate remedy to redress DMHC's acts and omissions as alleged herein, except through the issuance of a writ of mandate.

98. Wherefore, a writ of mandate pursuant to Code of Civil Procedure Sections 1085, 1086, and/or 1094.5 should issue.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants and each of them, and respectfully requests that the Court:

1.  for damages favor of Plaintiff and against Defendant Rouillard only in an amount to be proven at trial by reason plus interest as allowed by law;

34

2.   for temporary, preliminary and permanent injunctions enjoining the Order from being enforced;

3.  For punitive and exemplary damages to the extent permitted by State and Federal law;

4.  For a writ of mandate or mandamus directing Defendants to conform their actions to state and federal law, and permanently enjoining the Order.

5.  For Attorney's fees to the extent recoverable under state or federal law;

6.  For costs of suit herein incurred; and

7.  For such other and further relief as this Court may deem to be just and proper.

REQUEST FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury.

Dated: December 21, 2018

McClelland Advocacy

*/s/ Michael D. McClelland*

By: _____

MICHAEL D. MCCLELLAND, ESQ.
Attorneys for Plaintiff EMPLOYEE HEALTH SYSTEMS MEDICAL GROUP, Inc.

35

EXHIBIT A

XHIBIT A

DREW BRERETON
Deputy Director | Chief Counsel, Bar No. 213277
KYLE C. MONSON
Assistant Chief Counsel, Bar No. 251166
CHRISTOPHER B. LEE
Attorney III, Bar No. 248407
CALIFORNIA DEPARTMENT OF
MANAGED HEALTH CARE
980 9th Street, Suite 500
Sacramento, CA  95814-2725
916-323-0435 - Phone
916-323-0438 - Fax

Attorneys for Department of Managed Health Care

F I L E D

DEC 2 6 2017

DEPARTMENT OF MANAGED HEALTH CARE
BY _____
Filing Clerk

BEFORE THE DEPARTMENT OF MANAGED HEALTH CARE

OF THE STATE OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF: | Enforcement Matter No.:  17-1703 |
| **EMPLOYEE HEALTH SYSTEMS MEDICAL GROUP, INC.** | **ORDER TO CEASE AND DESIST** |
| | (Health & Saf. Code,, §§ 1341, 1344, 1367.02, subds. (a) & (d), & 1391.) |
| **ADVENTIST HEALTH PLAN, INC.** *DMHC License No. 933 0508* | |
| **AETNA HEALTH OF CALIFORNIA, INC.** *DMHC License No. 933 0176* | |
| **BLUE CROSS OF CALIFORNIA, INC.** *DMHC License No. 933 0303* | |
| **CARE 1ST HEALTH PLAN** *DMHC License No. 933 0326* | |
| **CIGNA HEALTHCARE OF CALIFORNIA, INC.** *DMHC License No. 933 0152* | |
| **FRESNO-KINGS-MADERA REGIONAL AUTHORITY** *DMHC License No. 933 0484* | |
| **HEALTH NET OF CALIFORNIA, INC.** *DMHC License No. 933 0300* | |
| **LOCAL INITIATIVE HEALTH AUTHORITY FOR L.A. COUNTY** *DMHC License No. 933 0355* | |

- 1 -

| | | |
|---|---|---|
| Cease and Desist Order | Enforcement Matter No.: 17-1703 | Document No.: 223062 |

**MOLINA HEALTHCARE OF CALIFORNIA, INC.**
*DMHC License No. 933 0322*

        Respondents.

The Director of the Department of Managed Health Care, by and through her designee, Deputy Director and Chief Counsel, Drew Brereton ("Complainant"), after investigation, determines as follows:

## I. PARTIES AND JURISDICTION

1.      The Department of Managed Health Care ("Department") is the state regulatory agency charged with administering and enforcing the Knox-Keene Health Care Service Plan Act of 1975, as amended (Health & Saf. Code, § 1340, et seq.), and title 28 of the California Code of Regulations (collectively referred to herein as the "Knox-Keene Act").

2.      Respondent **Adventist Health Plan, Inc.**, is now, and has been since February 14, 2014, a full service health care service plan licensed by the Department (License No. 933 0508), and is subject to the Knox-Keene Act. Its principal place of business is located at: 2100 Douglas Boulevard, Roseville, California 95661.

3.      Respondent **Aetna Health of California, Inc.**, is now, and has been since August 6, 1981, a full service health care service plan licensed by the Department (License No. 933 0176), and is subject to the Knox-Keene Act. Its principal place of business is located at: 2850 Shadelands Drive, Walnut Creek, California 94598.

4.      Respondent **Blue Cross of California, Inc.**, is now, and has been since January 7, 1993, a full service health care service plan licensed by the Department (License No. 933 0303), and is subject to the Knox-Keene Act. Its principal place of business is located at: 1 Wellpoint Way, Thousand Oaks, California 91362.

5.      Respondent **Care 1st Health Plan** is now, and has been since November 1, 1995, a full service health care service plan licensed by the Department (License No. 933 0326), and is subject to the Knox-Keene Act. Its principal place of business is located at 601 North Potrero Grande Drive, Monterey Park, California 91755.

- 2 -

Cease and Desist Order                Enforcement Matter No.: 17-1703                Document No.: 223062

6. Respondent **Cigna Healthcare of California, Inc.**, is now, and has been since March 23, 1979, a full service health care service plan licensed by the Department (License No. 933 0152), and is subject to the Knox-Keene Act. Its principal place of business is located at 400 North Brand Boulevard, Suite 400, Glendale, California 91203.

7. Respondent **Fresno-Kings-Madera Regional Authority**, also known as CalViva Health, is now, and has been since December 30, 2010, a full service health care service plan licensed by the Department (License No. 933 0484), and is subject to the Knox-Keene Act. Its principal place of business is located at 7625 North Palm Avenue, Suite 109, Fresno, California 93711.

8. Respondent **Health Net of California, Inc.**, is now, and has been since March 7, 1991, a full service health care service plan licensed by the Department (License No. 933 0300), and is subject to the Knox-Keene Act. Its principal place of business is 21281 Burbank Boulevard, Woodland Hills, California 91367.

9. Respondent **Local Initiative Health Authority for L.A. County**, dba L.A. Care Health Plan, is now, and has been since April 1, 1997, a full service health care service plan licensed by the Department (License No. 933 0355), and is subject to the Knox-Keene Act. Its principal place of business is 1055 West 7th Street, Los Angeles, California 90017.

10. Respondent **Molina Healthcare of California** is now, and has been since March 14, 1994, a full service health care service plan licensed by the Department (License No. 933 0322), and is subject to the Knox-Keene Act. Its principal place of business is 200 Oceangate, Suite 100, Long Beach, California 90802.

## II. STATUTORY AUTHORITY

11. Pursuant to Health and Safety Code section 1341, the Director is vested with the responsibility to administer and enforce the Knox-Keene Act. The Knox-Keene Act regulates health plans and the health plan business in California to protect and promote the interests of health plan enrollees. The Knox-Keene Act regulates any provider or subcontractor providing health or other services to a plan, any person with whom a health plan has made arrangements for services, or any person who engages in any act or practice in violation of the Knox-Keene Act.

Cease and Desist Order          Enforcement Matter No.: 17-1703          Document No.: 223062

(Health & Saf. Code, § 1341.)

12.     Pursuant to Health and Safety Code section 1391, the Director is vested with the power to issue an order directing a plan, solicitor firm, or any representative thereof, a solicitor, or any other person to cease and desist from engaging in any act or practice in violation of the provisions of the Knox-Keene Act.

13.     The Director may adopt orders as are necessary to carry out the provisions of the Knox-Keene Act. (Health & Saf. Code, § 1344, subd. (a).) This includes an order directing a health plan to cease and desist from engaging in any act or practice in violation of the Knox-Keene Act. (Health & Saf. Code, § 1391, subd. (a).)

14.     A health plan which delegates "any services it is required to perform to its medical groups, independent practice associations, or other contracting entities" cannot waive its legal obligations under the Knox-Keene Act. (Health & Saf. Code, § 1367, subd. (j).)

15.     "Economic profiling" is "any evaluation of a particular physician, provider, medical group, or individual practice association based in whole or in part on the economic costs or utilization of services associated with medical care provided or authorized by the physician, provider, medical group or individual practice association." (Health & Saf. Code, § 1367.02, subd. (d).)

16.     Each health care service plan that uses economic profiling is required to file with the Department a description of any policies and procedures related to economic profiling utilized by the plan and its medical groups and individual practice associations. The filing must, among other things, describe how these policies and procedures are used in utilization review, peer review, incentive and penalty programs, and in provider retention and termination decisions. The filing must also indicate how the economic profiling activities avoid being in conflict with Health and Safety Code section 1367, subdivision (g), which requires each plan to demonstrate that medical decisions are rendered by qualified medical providers, unhindered by fiscal and administrative management. (Health & Saf. Code, § 1367.02, subd. (a).)

## III. STATEMENT OF FACTS

17.     Respondents, and each of them, maintain or maintained contracts with Employee

- 4 -

Health Services Medical Group, Inc. (EHS), a for-profit corporation. Respondents delegate numerous functions to EHS to perform specified functions pursuant to its contracts with Respondents, including reviewing and authorizing requests for coverage for health care services (utilization review), claims payment, quality assurance, provider contract administration, and provider credentialing. EHS subcontracts these functions exclusively to SynerMed, Inc. ("SynerMed"), which performs nearly all of its medical and administrative functions, including utilization review, quality assurance, provider contract administration, provider credentialing, provider claims administration, capitation management, medical economics/data analysis, financial management and accounting, general contracts administration, and governmental relations.

18.     Under its arrangement with EHS, Respondents' enrollees typically access care through EHS's network of contracted primary care providers ("PCP"s). When a PCP determines that it is necessary for Respondents' enrollees to obtain specialty care, the PCP will submit a request for authorization for the enrollee to see a specialist. The request is made to SynerMed, which processes these requests for authorization on EHS's behalf and maintains the ability to approve, modify, or deny these requests. Without an authorization, EHS will not provide coverage for care from specialists.

19.     As part of its administration of the EHS provider network, SynerMed provides an electronic online provider portal where contracted PCPs can access and view the available EHS contracted medical specialists in their region, and from which those PCPs can select or request a specific specialist when submitting a request for authorization for specialist services.

20.     On June 21, 2017, SynerMed's CEO, James P. Mason, issued a "Contracting Playbook" in an e-mail which listed five directives aimed at lowering specialist costs for EHS. These directives included: "Re-narrow the specialty network via termination and removing them from the portal."

21.     In implementing the "Contracting Playbook", SynerMed staff was affirmatively directed to hide, or "suppress," providers from the referral system based in whole or in part on the cost of the services rendered by those providers. Using a data analytics program called "Tableau," SynerMed Provider Networking staff examined EHS's provider list to identify and suppress

- 5 -

"high-cost" providers, beginning with cardiologists, within EHS's network. Additional specialists identified to be narrowed included: diagnostic radiologists, dialysis providers, hematologists/oncologists, nephrologists, ophthalmologists, and rheumatologists.

22. In suppressing providers from SynerMed's referral system, SynerMed actively and secretly restricted "high-cost" specialists who maintained contracts with EHS from delivering care to enrollees assigned to EHS. These specialists continued to maintain contracts with EHS to provide services. However, as a practical matter, enrollees assigned to EHS by Respondents had no access to these numerous suppressed providers, which SynerMed unilaterally deemed to be high-cost. As a result of this conduct, SynerMed narrowed the specialty network available to Respondents' enrollees and to EHS's contracted PCPs.

23. EHS, through SynerMed, therefore redirected Respondents' enrollees to a limited set of specialty providers through an otherwise undisclosed, narrow network, restricted substantially based on cost.

24. The Department has conducted a diligent search of Department records and has found that none of the Respondents have previously disclosed the above-described and ongoing economic profiling of EHS's provider network through SynerMed.

### IV. FINDINGS

25. Respondents, and each of them, are licensees subject to the Department's jurisdiction for purposes of compliance with the Knox-Keene Act, and are responsible for continuous compliance with the Knox-Keene Act.

26. SynerMed took steps to narrow EHS's provider networks by restricting access to services and removing the ability of patients to be seen by certain contracted providers who were suppressed from EHS's specialist network based in whole or in part on the cost of the provision of services. As described herein, Respondents, through EHS, have engaged in the practice of economic profiling.

27. None of the Respondents have filed a proper economic profiling policy describing the above-described practice of restricting high-cost specialty providers from EHS's network based in whole or in part on cost, in violation of Health and Safety Code section 1367.02, subdivision (a).

- 6 -

28.     In further violation of Health and Safety Code section 1367.02, subdivision (a), Respondents have failed to demonstrate that EHS's economic profiling practices are consistent with Health and Safety Code section 1367, subdivision (g), which requires that medical decisions are rendered by qualified medical providers, unhindered by fiscal and administrative management.

29.     As a result of EHS's continued use of an economic profiling policy not filed with the Department, Respondents' provision of health care services through EHS constitutes an ongoing violation of Health and Safety Code section 1367.02, subdivision (a).

## V. ORDER

**THEREFORE**, the Director of the Department, by and through her designee, Deputy Director and Chief Counsel Drew Brereton, pursuant to Health and Safety Code sections 1344 and 1391, **ORDERS AS FOLLOWS:**

30.     Respondents, and each of them, shall cease and desist from engaging in their presently ongoing violations of Health and Safety Code section 1367.02, subdivision (a), by taking immediate steps to terminate their contracts which contain assignments of risk to EHS, including all fiscal, network, and any other administrative responsibilities.

31.     By **January 3, 2018**, Respondents, and each of them, shall file a transition plan ("Transition Plan") with the Department's Office of Enforcement via e-mail to christopher.lee@dmhc.ca.gov and kyle.monson@dmhc.ca.gov. The Transition Plan shall provide a definitive timeline for the orderly removal of enrollees from EHS. The Transition Plan shall include:

    a. A description of the steps that Respondent has taken or will take to sever its contractual relationship with EHS, including a date certain by which Respondent will file a block transfer with the Department's Block Transfer Unit, if necessary, and including a date certain by which Respondent will terminate its contractual relationship with EHS;

    b. A description of the steps that Respondent has implemented, and will implement, to ensure that clinically appropriate care continues to be provided to enrollees assigned to EHS in the brief period that Respondent remains contracted with EHS;

- 7 -

c.  A description of the steps that Respondent has implemented, and will implement, to ensure that continuity of care is maintained as enrollees transition from EHS; and

d.  A description of the steps that Respondent has implemented, and will implement, to ensure that EHS is not utilizing economic profiling to restrict its network of specialists in the brief period that Respondent remains contracted with EHS.

32.  By **February 5, 2018**, Respondents, and each of them, shall file a final proof of compliance ("Final Proof of Compliance") with this ORDER with the Department's Office of Enforcement via e-mail to christopher.lee@dmhc.ca.gov and kyle.monson@dmhc.ca.gov. The Final Proof of Compliance shall describe and affirm the cessation of Respondents' relationship with EHS.

33.  This ORDER shall be effective as of the date of this ORDER, and shall continue in full force and effect until further ORDER by the Director.

34.  This ORDER is solely intended to abate the present ongoing violation and shall not be the exclusive remedy to be exercised by the Department, pursuant to Health and Safety Code section 1394.

MICHELLE ROUILLARD
Director
Department of Managed Health Care

Dated:  December 26, 2017



DREW BRERETON
Deputy Director | Chief Counsel
Office of Enforcement

- 8 -

| Cease and Desist Order | Enforcement Matter No.: 17-1703 | Document No.: 223062 |